1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   ANTHONY JAY BREDBERG,                    CASE NO. C20-190 MJP

11               Plaintiff,                   ORDER GRANTING MOTIONS TO
                                              DISMISS;
12        v.
                                              GRANTING MOTION FOR
13   RANDY MIDDAUGH, et al.,                  SUMMARY JUDGMENT

14               Defendants.

15

16        THIS matter comes before the Court upon Defendants Ryan Ericson, Matthew Mahaffie,

17   and Erin Page's Second Motion for Summary Judgment (Dkt. No. 151), Defendants Sean

18   Curran, Randy Middaugh, and Emily Swaim's Motion to Dismiss (Dkt. No. 146), and upon

19   Defendants Paul Anderson, Alex Callender, Doug Gresham, and Diane Hennessey's Motion to

20   Dismiss (Dkt. No. 160.)  Having read the Motions, the Responses (Dkt. No. 157, 161), the

21   Replies (Dkt. No. 154, 159, 164), and all related papers, the Court GRANTS the Motions and

22   DISMISSES this action with prejudice.

23   //

24

**Background**

In his first complaint, Plaintiff, a certified professional soil scientist, alleged that 27 employees of government agencies and nonprofit or private organizations formed "the Enterprise" and worked together to discredit Plaintiff and interfere with his business and earning capacity.  (See Dkt. No. 1.)  Plaintiff brought claims against Defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ (b), (c), (d) and Washington's Criminal Profiteering Act of 1985, RCW 9A.82.120.

On July 10, 2020 the Court dismissed Plaintiff's first complaint without prejudice, allowing Plaintiff, who is proceeding pro se, leave to amend his complaint.  The Court found that Plaintiff had failed to allege basic required elements of his RICO claim, including a predicate act, proximate cause, or the existence of an enterprise.  (Dkt. No. 128.)  In particular, Plaintiff failed to allege the necessary elements of the predicate act of fraud: That the Defendants "made a false representation of a material fact with knowledge of its falsity, for the purpose of inducing the plaintiff to act thereon," or "that the plaintiff reasonably relied upon the representation as true and acted upon it to his or her damage."  (Id. at 6-7 (quoting 37 Am. Jur. 2d Fraud and Deceit § 24).); See also Restatement (Second) of Torts § 525 (1977)).

Plaintiff also failed to establish that the Defendants' alleged actions were the proximate cause of harm to Plaintiff.  As an example, the Court noted Plaintiff's allegation that one Defendant wrote a report disputing Plaintiff's findings, which required Plaintiff to spend time and effort defending his work, but it was Plaintiff who decided to charge his client for only one fourth of his time.  (Dkt. No. 128 at 8.)

Finally, the Court found that Plaintiff failed to sufficiently allege the existence of an enterprise.  (Id. at 9.)  Under RICO, "[p]leading an enterprise requires more than merely pleading

1  a pattern of racketeering activity because 'the "enterprise" is not the "pattern of racketeering

2  activity," it is an entity separate and apart from the pattern of activity in which it engages.'"

3  Williams v. PRK Funding Servs., Inc., No. C18-48 RSM, 2018 WL 3328398, at *5 (W.D. Wash.

4  July 6, 2018) (quoting U.S. v. Turkette, 452 U.S. 576, 583 (1981)).  The Court found that the

5  alleged racketeering activity is the only apparent connection between the Defendants, which is

6  insufficient to establish an enterprise.  (Dkt. No. 128 at 9.)

7       Plaintiff has now filed an amended complaint against 12 of the original

8  individually-named Defendants but has failed to address any of the deficiencies discussed in the

9  Court's previous Order.  Plaintiff's allegations are nearly identical in each case, changing a word

10  or two and in some cases moving paragraphs, but making no changes to the substance of his

11  allegations.  Plaintiff again raises claims under the RICO Act, 18 U.S.C. §§ 1961(5),

12  1962(b)-(d)(FAC, ¶¶ 97–113), and briefly mentions his "state law claim" (Id., ¶ 11), without

13  explicitly listing a violation of Washington law as one of his claims.

14       Three Defendants have now moved for summary judgment, submitting declarations that

15  they have had little interaction with the other Defendants and certainly never formed an

16  "Enterprise"; Plaintiff has not responded.  (Dkt. No. 151.)  Additionally, seven Defendants

17  brought motions to dismiss, noting the deficiencies in Plaintiff's amended complaint discussed

18  above, among other issues.  (See Dkt. Nos. 146, 160.)  For reasons described in more detail infra,

19  the Court finds that Plaintiff's lightly amended complaint fails to establish his RICO claims and

20  cannot be saved through further amendment.

21  //

22  //

23  //

24

1

**Discussion**

2    **I.      Legal Standards**

3         Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for

4    failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In ruling on a

5    motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most

6    favorable to the non-movant.  Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940,

7    946 (9th Cir. 2005); see also Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  The Court

8    must accept as true all well-pleaded allegations of material fact and draw all reasonable

9    inferences in favor of the plaintiff.  Wyler Summit P'Ship v. Turner Broad. Sys., Inc., 135 F.3d

10   658, 661 (9th Cir. 1998). Where, as here, a plaintiff appears pro se, the Court must construe his

11   pleadings liberally and afford the plaintiff the benefit of the doubt.  See Karim-Panahi v. Los

12   Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).

13        The standard of review for a motion for judgment on the pleadings under Rule 12(c) is

14   "functionally identical" to that for a motion to dismiss under Rule 12(b)(6).  Dworkin v. Hustler

15   Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).  Thus, dismissal on the pleadings is proper

16   only if "the movant clearly establishes that no material issue of fact remains to be resolved and

17   that he is entitled to judgment as a matter of law."  McGlinchy v. Shell Chem. Co., 845 F.2d 802,

18   810 (9th Cir. 1988).

19        Further, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or

20   mistake, a party must state with particularity the circumstances constituting fraud or mistake."

21   "If the complaint alleges that several defendants participated in a fraudulent scheme, 'Rule 9(b)

22   does not allow a complaint merely to lump multiple defendants together but require[s] plaintiffs

23   to differentiate their allegations . . . and inform each defendant separately of the allegations

24

surrounding his alleged participation in the fraud.'" <u>Capitol W. Appraisals, LLC v. Countrywide Fin. Corp.</u>, 759 F. Supp. 2d 1267, 1271 (W.D. Wash. 2010), <u>aff'd</u>, 467 F. App'x 738 (9th Cir. 2012) (quoting <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764-65 (9th Cir.2007) (quotations omitted)).  In meeting the particularity requirement, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.'" <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003) (citing <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th Cir.1997)).  Courts have held that Rule 9(b) applies to civil RICO claims.  <u>See</u> <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 553-54 (9th Cir.2007); <u>see also</u> <u>Moore v. Kayport Package Express, Inc.</u>, 885 F.2d 531, 541 (9th Cir.1989).

Even if a complaint is deficient, however, "'[d]ismissal without leave to amend is improper unless it is clear, upon <u>de novo</u> review, that the complaint could not be saved by amendment.'" <u>Intri–Plex Techs., Inc. v. Crest Group, Inc.</u>, 499 F.3d 1048, 1056 (9th Cir.2007).

## II.    Motion for Summary Judgment

Defendants Ryan Ericson, Matthew Mahaffie, and Erin Page, all employees of the Planning and Development Services Department in Whatcom County, move for summary judgment and request that they be awarded their attorney's fees and expenses under RCW 4.84.185.  (Dkt. No. 151.)  Defendants have submitted declarations that they did not form an enterprise with any of the other Defendants and do not know many of the other Defendants, having had limited contact with only a few.  (Dkt. Nos. 72-74.)  Plaintiff has not responded.

The Court finds Plaintiff's failure to oppose Defendants' motion to be an admission that their motion has merit.  <u>See</u> LCR 7(b)(2); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986) (finding that the moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which

he has the burden of proof).  In light of Defendants' unopposed declarations that they have not formed an enterprise or even interacted with many of the other Defendants, and the numerous other issues with Plaintiff's amended complaint, identified infra, the Court GRANTS Defendants Ericson, Page, and Mahaffie's Motion for Summary Judgment.

Defendants may submit a motion for attorney's fees within two weeks of the date of this Order. Their motion must explain why RCW 4.84.185 is applicable in this matter when the Court found it had no jurisdiction over Defendant's claim under Washington law in his original complaint and Plaintiff does not plead a claim under Washington law in his amended complaint.

### III.    Motions to Dismiss

### A. Defendants' Curran, Middaugh, Swaim, Anderson, Gresham, Hennessey, Callender

Defendants' Curran, Middaugh, and Swaim (the "Snohomish County Defendants") move to dismiss Plaintiff's amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 146.)  They argue that Plaintiff's RICO claims should be dismissed because he fails to adequately plead predicate acts, a pattern of racketeering activity, or the existence of an enterprise.  Defendants Anderson, Gresham, Hennessey, and Callender (the "State Defendants") move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(c) and pursuant to Federal Rule of Civil Procedure 9(b) because Plaintiff's allegations of fraud fail to include the necessary specificity of the time, place, and nature of the alleged fraudulent activities.

Plaintiff's amended complaint makes the following allegations against the remaining Defendants:

1. Sean Curran

Plaintiff alleges that Defendant Curran, a Snohomish County employee and "a competitor to the Plaintiff," rescinds and has "intentionally delayed" Plaintiff's project approvals and "has also refused or neglected to collect or provide data" to support his findings.  (FAC, ¶¶ 33, 37.) Curran has also "ignored the scientific fact that land disturbing activity beyond a landowner's control . . . can both cause water to flow onto a site and impede the natural flow of water off a site, thus resulting in standing water which has the appearance of wetland conditions."  (Id. ¶ 34.)

2.  Randy Middaugh

Plaintiff alleges that Defendant Middaugh, the Project Manager for Snohomish County, recommends that the County refuse appeals by Plaintiff's clients.  (Id. ¶ 30.)  Middaugh also makes "disparaging statements about the Plaintiff . . . with the explicit intent to deprive the Plaintiff of work and livelihood."  (Id.)  And he made mistakes in measuring the water table on a site, "knowingly falsified field data, refused to collect field data, and has misrepresented the facts in the field—scientific findings—to concerned parties in order to retaliate against and to damage the Plaintiff."  (Id., ¶ 31.)

3.  Emily Swaim

Plaintiff alleges that Defendant Swaim, another Snohomish County employee, asserted that Plaintiff had wrongly represented a stream on his client's property as a ditch.  (Id. ¶ 38.) Swaim then refused to provide soil logs and data sheets, "citing County policy not to supply supporting information and documentation."  (Id.)  At a subsequent cite visit, Swaim "agreed with everything the Plaintiff had submitted, and approved the original work after a six month delay."  (Id.)  Plaintiff alleges he could not ask his clients to compensate him for his work during this delay and therefore he "lost clients, and thousands in billable time and materials."  (Id.)

4.  Paul Anderson

Defendant Anderson, formerly an employee with the Washington DOE, is alleged to have "repeatedly and with malicious intent falsified data and disparaged the Plaintiff to his clients and other professionals." (Id. ¶ 39.) After Plaintiff's client cleared a farm field of trees, Defendant Anderson "authored a report which stated that the majority of the cleared area was a wetland" but the Plaintiff found no wetland. (Id.) An engineer from the Army Corps of Engineers performed a site visit and agreed with Plaintiff, but "as a direct result of Anderson's wrongful conduct, the gravel pit was never sold." (Id., ¶ 40.) This cost Plaintiff "a loss of $20,000 payment from the property owners . . . and further damage to his reputation." (Id. ¶ 41.) On a separate occasion, Anderson represented that his field data was accurate, when Plaintiff's colleague said it was falsified. (Id. ¶ 46.) He also "omitted dates from photos, did not flag any of his data test holes in the field, made a number of false statements in his report, [] dug all but one of his data plot holes in the disturbed soils of the pipeline easement or ditch bottoms, and had not followed the proper manuals and protocols." (Id.) At another point, Anderson disagreed with Plaintiff's report but the notes he provided "did not support his false allegations that the Plaintiff's report was erroneous." (Id. ¶ 49.)

   5.   Doug Gresham

Plaintiff alleges that Defendant Gresham, an Employee of the Washington DOE, "colluded and conspired with other Enterprise members to misrepresent site conditions," "misrepresent the required protocols," and "refused to permit the Plaintiff to attend site visits affecting his own clients' projects." (Id., ¶ 52.) Gresham also refused to attend meetings with Plaintiff and "refuted the Plaintiff's findings" even though "Gresham knew that the Plaintiff's reports were accurate." (Id.)

   6.   Diane Hennessey

Defendant Hennessey, as an employee of the Washington Department of Ecology, allegedly "erroneously and fraudulently contradicted . . . findings" from one of Plaintiff's reports. (Id. ¶ 77.)  Hennessey "then produced a 127-page report in May, 2018" that contained "false field data." (Id. ¶ 83.)  And Hennessey "did not report accurately based on the Plaintiff's data sheets" and "ignored a thin brown layer of soil clearly visible in the soil monolith." (Id.)  Plaintiff alleges that on another occasion Hennessey "produced false field data, which she then submitted to [Whatcom] County." (Id. ¶ 86.)

    7.  <u>Alex Callender and Niki Yonkow</u>

Plaintiff makes joint allegations against Defendants Callender and Yonkow, both employees of Pierce County, Washington.  Plaintiff alleges the Defendants "submitted false data by email and mail knowingly and intentionally . . . in service to the aims and purposes of the Enterprise." (Id. ¶¶ 53-54.)  They also allegedly stated that data submitted by Plaintiff must be reevaluated when "the Plaintiff's report was not in error." (Id. ¶¶ 54-55.)  Then they submitted "false data sheets—which they later had to revise and retract." (Id. ¶ 56; <u>see also</u> ¶ 58.)  And they "coerced the Plaintiff into finding wetlands where there were no wetlands, indeed to 'make up' wetlands that did not exist." (Id. ¶ 57.)  They committed fraud "and other acts of racketeering" when they "intentionally disregarded and ignored the Plaintiff's data and report, which had included a previous Pierce County Hearing Examiner decision in the Plaintiff's favor." (Id., ¶ 58.)  On another occasion, Callender "chose to contradict . . . expert advice" by finding that the soil on site was a different color than that found by the expert. (Id. ¶ 60.)

    8.  <u>Kirk Prindle</u>

Plaintiff alleges that Defendant Prindle, an employee of Snohomish County, told one of Plaintiff's clients "it was unfortunate that he had associated with the Plaintiff, because the

1    Plaintiff's reviews and delineations are 'always incorrect, and always rejected.'" (Id. ¶ 36.)

2    Prindle also "intentionally delayed [Plaintiff's] projects." (Id. ¶ 37.)

3         The Court finds these allegations insufficient to satisfy any of the basic elements of

4    Plaintiff's RICO claims.

5    **A.  No Predicate Acts**

6         Plaintiff has once again failed to adequately plead racketeering activity, a necessary

7    element for each of his RICO claims. As the Court explained in its Order dismissing Plaintiff's

8    first complaint (Dkt. No. 128 at 5-6), to make out a claim under RICO, a plaintiff must show that

9    defendants have engaged in a "pattern of racketeering activity." Diaz v. Green Tree Servicing

10   LLC, No. C15-359RSL, 2016 WL 1384829, at *2 (W.D. Wash. Apr. 7, 2016); Durning v.

11   Citybank, Int'l, 990 F.2d 1133, 1138 (9th Cir. 1993); 18 U.S.C. § 1962. "'[R]acketeering

12   activity' is any act indictable under several provisions of Title 18 of the United States Code, and

13   includes the predicate acts of mail fraud and wire fraud." Sanford v. MemberWorks, Inc., 625

14   F.3d 550, 557 (9th Cir. 2010) (quoting Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir.2004)).

15        Because defamation, coercion, threats, and intimidation are not predicate offenses under

16   RICO, 18 U.S.C. § 1961(1)(B); see also Marks v. City of Seattle, No. C03-1701P, 2003 WL

17   23024522, at *6 (W.D. Wash. Oct. 16, 2003), Plaintiff's allegations that Defendants "made

18   disparaging statements about the Plaintiff . . . with the explicit intent to deprive the Plaintiff of

19   work and livelihood" (FAC, ¶ 30; see also id. ¶ 39) or that Defendants "coerced the Plaintiff into

20   finding wetlands where there were no wetlands" (Id. ¶ 57), cannot form the basis for his RICO

21   claims. The Court therefore analyzes Plaintiff's allegations in support of the predicate acts of

22   mail and wire fraud.

23        To establish a claim for fraud:

24

> [A] plaintiff must show by clear and convincing evidence that the defendant made a false representation of a material fact with knowledge of its falsity, for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his or her damage.

37 Am. Jur. 2d Fraud and Deceit § 24.  See also Restatement (Second) of Torts § 525 (1977). Where predicate acts are based in fraud, they must be pleaded with particularity.  Odom, 486 F.3d at 553-54; see also Fed. R. Civ. P. 9(b).

Plaintiff alleges broadly that the Defendants falsified field data.  (See, e.g., FAC ¶ 31 (Defendant Middaugh "knowingly falsified field data, refused to collect field data, and has misrepresented the facts in the field—scientific findings—to concerned parties in order to retaliate against and to damage the Plaintiff"); id., ¶ 41 (Defendant Anderson "made a number of false statements in his report").)  Many of the Defendants also allegedly fail to provide support for their erroneous conclusions.  (Id. ¶ 38 (Defendant Swaim refused to provide soil logs and data sheets, "citing County policy not to supply supporting information and documentation"); id., ¶ 34 (Defendant Curran "refused or neglected to collect or provide data" to support his findings).)  Plaintiff alleges these actions damaged his reputation and cost him business. (Id. (Plaintiff "lost clients, and thousands in billable time and materials"), ¶ 41 (Defendant Anderson's report contradicting Plaintiff caused Plaintiff "a loss of $20,000 payment from the property owners . . . and further damage to his reputation").)

These allegations do not meet the criteria for fraud.  Nowhere does Plaintiff allege that the Defendants made false statements "for the purpose of inducing the [P]laintiff to act thereon," or that Plaintiff "reasonably relied upon" Defendants' misstatements "and acted upon it to his [] damage."  37 Am. Jur. 2d Fraud and Deceit § 24.  As noted in the Court's previous Order when addressing the same deficiency, "[t]he notion that Plaintiff justifiably relied on the Defendants' statements criticizing his reports and contradicting his work is not compatible with the premise

1  of each of Plaintiff's allegations, which describe his enduring assessment that Defendants

2  statements were false." (Dkt. No. 128 at 7.) And the allegations lack any indication of what data

3  the Defendants allegedly falsified, how they falsified the data, or when they did so, and therefore

4  do not meet the particularity required for averments of fraud, which "must be accompanied by

5  'the who, what, when, where, and how' of the misconduct charged.'" Vess, 317 F.3d at 1106

6  (citation omitted); (See Dkt. No. 146 at 12.)

7  **B.  No Proximate Cause**

8     In its previous Order, the Court found that Plaintiff "failed to allege that the actions of

9  many of the Defendants caused harm at all, and where he [] alleged harm, it [was] insufficient to

10  satisfy the proximate cause element of his RICO claims." (Dkt. No. 128 at 8.) "[A] plaintiff

11  may sue under [RICO] only if the alleged RICO violation was the proximate cause of the

12  plaintiff's injury." Anza v. Ideal Steel Supply Co., 547 U.S. 451, 453 (2006). Plaintiff's

13  amended complaint fails to establish that Defendants were the proximate cause of any harm to

14  Plaintiff. In many cases, Plaintiff fails to allege that he suffered any harm at all as a result of

15  Defendants' conduct. Where he does allege that he was harmed, it is not clear how Defendants

16  actions contributed to this harm. For example, in allegations made against Defendant

17  Anderson—one of the few Defendants that Plaintiff accuses of causing specific harm—Plaintiff

18  contends that after Anderson found a wetland where Plaintiff believed there was none,

19  Plaintiff's client was unable to sell his property, costing Plaintiff "a loss of $20,000 payment

20  from the property owners . . . and further damage to his reputation." (Id. ¶¶ 39-41.) But where

21  Plaintiff submitted his own report, and an engineer from the Army Corps of Engineers allegedly

22  agreed with Plaintiff during a site visit, it is unclear how Anderson's dissenting opinion blocked

23  the sale. Plaintiff has also failed to allege there was a pending offer on the property. Without

24

1    additional facts, Plaintiff's allegations are too speculative to support a finding that Anderson's

2    determination was the proximate cause of Plaintiff's lost earnings.

3    **C.  No Enterprise**

4        "[A]n 'enterprise' is an entity or 'group of persons associated together for a common

5    purpose of engaging in a course of conduct.'"  <u>Williams</u>, 2018 WL 3328398, at *5 (quoting

6    Turkette, 452 U.S. at 583).  "Pleading an enterprise requires more than merely pleading a pattern

7    of racketeering activity because '[t]he "enterprise" is not the "pattern of racketeering activity," it

8    is an entity separate and apart from the pattern of activity in which it engages.'"  <u>Williams</u>, 2018

9    WL 3328398, at *5 (quoting <u>Turkette</u>, 452 U.S. at 583) (emphasis added).

10       In dismissing Plaintiff's first complaint, the Court found that he had not sufficiently

11   alleged the existence of an enterprise because the alleged racketeering activity is the only

12   apparent connection between the Defendants, which is insufficient to establish an enterprise.

13   <u>Williams</u>, 2018 WL 3328398, at *5.  Plaintiff has not fixed this deficiency in his amended

14   complaint.  The only apparent commonality among the Defendants in this matter is that they all

15   investigate wetlands on properties that Plaintiff has also evaluated.  (Dkt. No. 160 at 15.)  And

16   Plaintiff has once again failed to allege any facts that would establish Defendants knew of the

17   existence of an "enterprise" or that their actions were undertaken for the purposes of an

18   enterprise.  (<u>Id.</u>)  Therefore, Plaintiff's "bare assertions of a pattern of racketeering activity [still]

19   do not establish an enterprise and they do not, therefore, satisfy Plaintiffs' burden."  <u>Doan</u>, 617

20   Fed. App'x at 686.

21   **D.  No Conspiracy**

22       Plaintiff also alleges a conspiracy to violate RICO, 18 U.S.C. § 1962(d), which makes it

23   "unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or

24

1   (c) of this section." Because Plaintiff "has failed to allege the requisite substantive elements of

2   RICO, the conspiracy cause of action cannot stand." Religious Tech. Ctr. v. Wollersheim, 971

3   F.2d 364, 367 n. 8 (9th Cir. 1992).

4                                                    **Conclusion**

5          Plaintiff's amended complaint has not corrected any of the defects identified in the

6   Court's Order dismissing Plaintiff's first complaint.  Plaintiff has not alleged the basic elements

7   of a RICO claim, including the required elements of a predicate act, proximate cause, and the

8   existence of an enterprise.  While the Court is required to give the pro se Plaintiff broad leeway,

9   the Court is also cognizant of the tremendous resources the Defendants have expended in

10  defending against allegations that amount to no more than professional disagreements.

11  Plaintiff's amended complaint is no different in substance from his original complaint and it has

12  become clear to the Court that Plaintiff's claims cannot be saved by further amendment.  The

13  Court therefore GRANTS:

14         (1) Defendants Ryan Ericson, Matthew Mahaffie, and Erin Page's Second Motion for

15             Summary Judgment (Dkt. No. 151);

16         (2) Defendants Sean Curran, Randy Middaugh, and Emily Swaim's Motion to Dismiss

17             (Dkt. No. 146);

18         (3) Defendants Paul Anderson, Alex Callender, Doug Gresham, and Diane Hennessey's

19             Motion to Dismiss (Dkt. No. 160.)

20  Further, the Court finds, sua sponte, that Plaintiff has failed to state a claim against Defendants

21  Kirk Prindle and Niki Yonkow, and therefore DISMISSES Plaintiff's claims against these

22  Defendants.  This matter is DISMISSED with prejudice.

23  //

24

The clerk is ordered to provide copies of this order to Plaintiff and all counsel.

Dated January 27, 2021.

Marsha J. Pechman
United States Senior District Judge